## COMMISSIONER OF INTERNAL REVENUE v. TENNEY.

No. 3608.

Circuit Court of Appeals, First Circuit.

June 12, 1941.

422

F. E. Youngman, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Edward J. Keelan, Jr., of Boston, Mass. (Hale & Dorr, of Boston, Mass., on the brief), for Haidee S. Tenney.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

The Commissioner of Internal Revenue petitions for review of a decision of the Board of Tax Appeals ruling that there was no deficiency in the income tax of Haidee S. Tenney for the year 1935.

The taxpayer married George L. Tenney in 1934. Mr. Tenney was in the insurance business, from which he received an annual income of about $4,000, but apparently he possessed no substantial capital. According to his testimony he had some competence in stock market trading on the basis of experience in the market for ten or fifteen years off and on; but Mrs. Tenney had had no such experience. Some time after the marriage, Mr. Tenney testified, "it came to my attention that my wife had a considerable sum of money".

In March, 1935, the taxpayer and her husband made a certain oral agreement which, in May of that year, was reduced to writing. By this agreement, Mrs. Tenney was to supply capital for stock market operations. Her husband was to give his best advice and judgment in the operation of the account and "to provide whatever services may be necessary from an accounting or record keeping standpoint". Net profits were to be apportioned —"one-half to be the property of Haidee S. Tenney and one-half to be the property of George L. Tenney". Net losses were to be similarly apportioned—"one-half to be for the account of Haidee S. Tenney and one-half for the account of George L. Tenney". Further, the agreement provided:

"It is understood and agreed that any Dividends or income received shall be absolutely the property of Haidee S. Tenney.

"Likewise any interest charges arising from any debit balance occasioned by such stock market transactions shall be for the account of Haidee S. Tenney.

"It is also distinctly understood and agreed that the original Capital, as well as any subsequent Capital, and/or the total equivalent thereof, from time to time furnished by Haidee S. Tenney and which shall be determined as shown by the books of account shall remain unreservedly the property of Haidee S. Tenney and that George L. Tenney has absolutely no interest in such Capital nor in anything beyond the share of Net Profits or Net Losses accruing to him as provided for in this agreement, and as may be determined by the books of account.

"Each party shall have the right at any time to make withdrawals from his or her share of the Net Profits."

Pursuant to this agreement, Mrs. Tenney, in her own name, opened a brokerage account with Hayden Stone & Company in Boston. In 1935 a large number of transactions of buying and selling were executed. Mr. Tenney testified: "She did own all of the money and she owned the stock in her name. The interest and dividends were solely hers. I had no right at all in the stocks and bonds. I may have told her what to sell and when to sell. She did not necessarily have to take my advice but she did." At the end of the year the account showed a net profit of $36,384.72, which stood on the books of the broker to the credit of Mrs. Tenney. In 1936 Mrs. Tenney gave her personal check to her husband for his share in the sum of $18,-192.36. In their separate returns for 1935 each spouse reported $18,192.36 as capital gains from these stock market operations.

The Commissioner ruled that the entire profit of $36,384.72 was income of the taxpayer, and advised her of a deficiency accordingly. In its decision now under review, the Board found that: "Only one-half of it was her income," and hence determined that there was no deficiency.

We think that the Board's findings cannot stand, on the undisputed facts.

Laying aside for the moment the question whether the agreement between husband and wife is enforceable under Massachusetts law, what is the nature of the agreement, on its face? It is not called a partnership, and so far as appears, the parties did not file the partnership return called for by § 187 of the Revenue Act of 1934, 48 Stat. 730, 26 U.S.C.A. Int.Rev.Acts, page 729. The agreement and the course of business under it are consistent with this interpretation: that the brokerage account is Mrs. Tenney's; the stocks traded are hers; it is for her to say whether a particular transaction is to be executed or not; all the profits accrue to her as the fruit of the capital tree which she planted in the broker's office and title to which she carefully retained; in compensation for Mr. Tenney's investment advice and in consideration of his contractual undertaking to assume a share of any losses, Mrs. Tenney agrees to pay her husband a share of the profits. Cf. Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665. It may be significant that in her original petition before the Board the taxpayer described the $18,192.36 received by her husband as "salary paid by the taxpayer to George L. Tenney" in 1935; and she asked the Board to rule that such salary was "an ordinary and necessary expense and deductible in computing the petitioner's income". But such expenses in the course of managing one's personal investments cannot be deducted as an ordinary and necessary expense paid or incurred "in carrying on any trade or business". Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. ——, decided by the Supreme Court February 3, 1941. In her amended petition before the Board the taxpayer changed her theory, and put forward the claim that only half of the net profits accrued to her and that the remaining half belonged to her husband, under the agreement.

But assuming in the taxpayer's favor that she and her husband intended to form a partnership, the insurmountable difficulty remains that in Massachusetts a married woman is incapable of making a contract with her husband, and this includes a contract of partnership. Edgerly v. Equitable Life Assurance Society, 287 Mass. 238, 191 N.E. 415. Had there been a net loss during the taxable year it is clear that Mrs. Tenney could not have successfully sued her husband either at law or in equity, to compel him to indemnify her for one-half the loss. Gahm v. Gahm, 243 Mass. 374, 137 N.E. 876; Giles v. Giles, 279 Mass. 284, 181 N.E. 176. From this it must follow that Mr. Tenney could not have successfully sued the taxpayer under the invalid agreement to recover from her one-half the net profits standing to her credit in the brokerage account. The present case is not like O'Brien v. O'Brien, 256 Mass. 308, 152 N.E. 80, where a resulting trust was enforced in equity as between husband and wife; nor is it like Young v. Young, 251 Mass. 218, 146 N.E. 574, where a husband by a suit in equity recovered back property he had conveyed to his wife, upon failure of consideration. Ciarlo v. Ciarlo, 244 Mass. 453, 139 N.E. 344, is also distinguishable, for there a court of equity restored to a husband property which the wife had obtained from him by fraudulent representations. In these three cases relief was granted under recognized heads of equity jurisdiction; but in none of them was the court directly or indirectly enforcing a contractual undertaking between husband and wife.

In the case at bar the profit of $36,384.72 represented net capital gains realized upon the sales of securities owned by the taxpayer alone. Legally, the whole gain accrued to the taxpayer, and any claim which Mr. Tenney might have to a share in the profits necessarily rests upon the unenforceable agreement between himself and his wife. The whole of the gain is taxable to Mrs. Tenney. Turbeville v. Commissioner, 5 Cir., 84 F.2d 307. See Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665.

The decision of the Board of Tax Appeals is vacated and the case is remanded to the Board with directions to compute the deficiency in conformity with this opinion.